In the Matter of the Judicial Settlement by MARY J. CLARK, as Executrix, etc., of the Account of LEMUEL B. CLARK, as Executor, etc.

Although a referee, in his report, places a finding of fact among his conclusions of law, this does not deprive it of its force.

In proceedings under the provisions of the Code of Civil Procedure (§ 2606), giving the surrogate jurisdiction upon the death of an executor to require his executor or administrator to account for and deliver over the trust estate, such representative stands in place of the decedent for the purpose of the accounting, and the surrogate's power is precisely the same as if the letters of the deceased executor had been revoked in his lifetime and he had been called upon to deliver up the assets.

In such a proceeding, the referee to whom the matter was referred by the surrogate found as facts that a large amount of money belonging to the estate was received by C., the deceased executor, beyond the sums acknowledged in the account presented by his executrix, specifying various items, including one of $15,000 received by C. within three months of his death, and "deposited by him in his own private bank account," and that "there was no evidence of the disposition of said funds" by him, with certain specified exceptions; also, that the accounting executrix, although in possession of C.'s bank and check-books, refused to produce them. As conclusions of law, the referee found that there being no evidence of the disposition of said funds by C., they are presumed to have come into the possession of his executrix; and that said presumption was strengthened by the deposit by C. to his private account, and the refusal of his executrix to produce such book, and that a decree should be entered against her individually and as executrix for the sums due. Upon the hearing before the surrogate he modified the finding that the moneys received by C. were deposited by him in his own private account, by substituting a finding that the moneys were deposited to his own individual credit, and he sustained exceptions to the conclusions of law, so found, as to the presumption that the fund came into the possession of the executrix, and to the direction of judgment against her individually, and he awarded judgment against her as executrix simply; the report in all other respects was confirmed. The General Term affirmed the decree on the ground mainly that there was no finding by the referee that the fund belonging to the estate received by C. passed into the hands of his executrix. *Held*, error; that the finding as to the presumptions were of fact, not of law, and amounted to a finding that the fund which C. received passed on his death into the actual possession of the executrix; and that the conclusion as to her individual liability followed as a conclusion of law.

(Argued January 28, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made July 9, 1889, which affirmed a decree of the surrogate of the county of New York.

The nature of the proceeding and the facts are sufficiently stated in the opinion.

*Horace Secor, Jr.*, for appellant. Upon the trial of an issue of fact before the surrogate, section 2545 of the Code makes sections 992–998 applicable to surrogates courts "so as to enable the surrogate's rulings upon the law to be reviewed, where there is no question of fact involved, without the expense and trouble of making up a case containing all the testimony." (Throop's Anno. Code, § 2545; *Angevine* v. *Jackson*, 103 N. Y. 470; *In re Hood*, 104 id. 106; *Schwarz* v. *Weber*, 103 id. 658; *Berger* v. *Berger*, 111 id. 527, 530; *Billings* v. *Russell*, 101 id. 228; Code, § 2546; *In re Niles*, 47 Hun, 348; *Wheelwright* v. *Rhoades*, 11 Abb. [N. C.] 382; 28 Hun, 57.) The main question involved on this appeal is as to the surrogate's disallowance of so much of the referee's conclusions of law as finds in substance that the moneys in question came into the hands of the accounting executrix, and directs a decree against her, personally, therefor. If these moneys came into her hands, there can be no question as to our right to a decree against her, personally. (Code Civ. Pro. § 2606; *In re Fithian*, 44 Hun, 457; *In re Adams*, 2 Redf. 66; *In re Fithian*, 14 Civ. Pro. Rep. 52; *Bleecker* v. *Johnston*, 69 N. Y. 311; *L., etc., Co.* v. *M., etc., Co.*, 7 Wend. 31; *Livingston* v. *Newkirk*, 3 Johns. Ch. 312; *Clifton* v. *U. S.*, 4 How. [U. S.] 242; *Bruce* v. *Kelly*, 7 J. & S. 27, 36, 38; *Wylde* v. *N. R. R. Co.*, 53 N. Y. 156, 163; *Armory* v. *Delamaire*, 1 Smith's L. C. 679; *People* v. *McWhorter*, 4 Barb. 438; 1 Greenl. on Ev. §§ 33, 37; *Howard* v. *Daly*, 61 N. Y. 366; *Lowery* v. *Erksine*, 113 id. 58; 2 Perry on Trusts, § 821; *Sherman* v. *H. R. R. R. Co.*, 64 N. Y. 254, 259.)

*G. W. Cotterill* for respondent. The court has no jurisdiction of this appeal, for the want of a case. (Code Civ.

Pro. § 2576.) The appellant not having made a case contain-. ing the evidence, the law presumes that the evidence was. conclusive and fully justified the surrogate in his refusal to. confirm the report. (*Porter* v. *Smith*, 107 N. Y. 531; *Bur-ger* v. *Burger*, 111 id. 530.) The referee plainly exceeded. his powers under the order of reference, and had no right to. make any findings whatever charging Mrs. Clark personally. (*Boughton* v. *Flint*, 74 N. Y. 477.) The finding of the referee, that, Clark having deposited the money "in his own private bank account," the presumption is that the same came. into Mrs. Clark's possession as the executrix of her husband, there being no evidence of the disposition of said funds,. is wholly unwarranted as a matter of law on its face, and becomes untenable in the light of the evidence. (2 R. S. 71,. § 11; *Shook* v. *Shook*, 19 Barb. 656; *L. & F. Ins. Co.* v. *M. F. Ins. Co.*, 7 Wend. 33.)

FINCH, J. On the 8th day of July, 1886, the petitioner, describing herself as the widow and executrix of Freeman J.; Fithian, deceased, presented her petition to the surrogate,. reciting that letters testamentary on the estate of Fithian, had been issued on the 15th day of October, 1884, to Lemuel B.. Clark; that he died June 9, 1886, having served as executor of Fithian for about one year and three-quarters; that his widow, Mary J. Clark, had on the day preceding the filing of the petition been duly appointed executrix of the will of said Clark by letters testamentary regularly issued; that Clark had never in his life-time filed an inventory or rendered an account as executor of Fithian; and asking that Mrs. Clark be cited to show cause why the account of Clark should not be rendered and settled. A citation was issued accordingly,. and on its return Mrs. Clark rendered an account to which many and serious objections were taken, and the surrogate. thereupon made an order referring it to a referee. This was done under the provisions of section 2606 of the Code, which gives the surrogate jurisdiction upon the death of an executor to require his executor or administrator to account-

for and deliver over the trust estate, precisely as if the letters of the deceased executor had been revoked in his life-time and he had been called upon to deliver up the assets. His representative stands in his place for the purpose of such accounting and delivery. The reference was ordered under the authority of section 2546, which permits, among other things, a reference "to examine an account rendered, to hear and determine all questions arising upon the settlement of such an account which the surrogate has power to determine, and to make a report thereon, subject, however, to confirmation by the surrogate." The section then gives to the referee "the same power" and entitles him to the same compensation "as a referee appointed by the Supreme Court for the trial of an issue of fact in an action." So far the section followed section 6 of chapter 359 of the Laws of 1870, which related to Surrogate's Courts in the city of New York. Its next step, however, is much broader in its terms. It reads : "The provisions of this act applicable to a reference by the Supreme Court apply to a reference made as prescribed in this section so far as they can be applied in substance, without regard to the form of proceeding." How much or how little is accomplished by this very general language it may trouble us some day to determine. It seems to open everything and settle nothing. For present purposes we may possibly, to some extent, avoid its interpretation, since the appeal here pending is taken solely from so much of the decree of the surrogate as modified the determination of the referee. The latter, after hearing the evidence, made formal findings of fact and conclusions of law. He found, as facts, that a large amount of money was received by Clark which belonged to the Fithian estate, beyond the sums acknowledged in Mrs. Clark's account; that $3,000 thereof was so received by Clark on the 3d of November, 1884, and $15,000 on the 23d of February, 1886, which was less than four months before Clark's death ; that the moneys so received by Clark "were deposited by him in his own private bank account ; " that there was "no evidence as to the disposition of said funds so received by said Clark as

such executor, except the payments for which credit is allowed and also the investment of $5,000 thereof in the note of Horace F. Clark;" and that the accounting executrix, although in possession of Clark's bank and check-books, refused to produce the same. The referee then found four conclusions of law, as he denominates them: First, that there is due the estate of Fithian $24,864.75; second, that there being no evidence of the disposition of the funds by Clark, they are presumed to have come into the possession of his executrix; third, that such presumption is strengthened by the deposit of Clark to his private account and the refusal of his executrix to produce his bank and check-books; and, fourth, that a decree should be entered against Mrs. Clark, individually and as executrix, for the sum found due.

When the report was filed with the surrogate, Mrs. Clark filed exceptions thereto. We do not know what they were, except as they are recited in the surrogate's decree. On the hearing before him, he allowed five of the exceptions taken by Mrs. Clark, viz.: Her second exception, which related to a credit claimed, and which is immaterial here; her fourth exception to the finding that the moneys received by Clark were deposited in his own private account, which the surrogate modified by a finding of his own, that "said moneys so received were deposited by him to his individual credit in the Hanover National Bank;" her eighth exception "to each and every part of the second conclusion of law, which finds or decides that the funds are presumed to have come into the possession" of the executrix; her ninth exception to the third conclusion as to the strengthening of that presumption; and her tenth exception to the award of an individual judgment. The surrogate then made a decree settling the account and awarding judgment against Mrs. Clark as executrix. From so much of this judgment as denied the individual liability of Mrs. Clark the petitioner appealed to the General Term.

Upon that appeal no case was made, and hence there could be no review of the facts. (Code, § 2576.) The evidence was not returned, and merely what is denominated a judg-

ment-roll.  Of course, questions of law only could be pre-
sented.  Whether they could be raised without the trace of
an exception to the decision of the surrogate, and by treating
his modification of the referee's report as appellate action
rather than a primary and original decision, is an inquiry upon
which we do not enter, because no such objection is taken.
Those presented and argued stand upon other grounds.  They
were, as repeated here, first, that the whole case and all the
evidence was before the surrogate, and it must be assumed
that it warranted his decision; and, second, that there was no
finding by the referee that the fund belonging to the Fithian
estate and received by Clark had passed into the hands of
Mrs. Clark.  Upon this last ground, chiefly, the General Term
affirmed the decision of the surrogate, but on this appeal both
grounds are relied upon by the respondent.

The first might prove fatal to the appeal but for one con-
sideration.  Clark might have disposed of the Fithian fund
during the last four months of his life so that no part of it
was left when he died, and none of it passed to his executors,
and it is said that fact may have been disclosed by the evi-
dence upon which the surrogate acted, and we cannot assume
the contrary.  The answer is that the referee found the con-
trary, and the surrogate assented to that finding.  It is the
fifth finding of fact, and asserts that there is no evidence as to
the disposition of the fund by Clark after he received it,
except in the two respects stated, and involving only a small
part of it.  To that finding of the referee it does not appear
that Mrs. Clark objected.  If she did the surrogate refused to
sustain her objection, for it is not among those which he did
sustain.  He confirmed the report in all respects except as he
modified it, and so his decision must be tested upon the theory
on which it stood, that the fund went into Clark's hands, and
there was no proof that any of it went out except the two
items specified.

We are thus brought to consider the view of the General
Term upon which it rested its affirmance.  It may be conceded
that the findings of the referee, as it respects their form, are

open to criticism, and that some of them are rather statements of evidence than of facts, and are wrongly denominated conclusions of law. And yet I think that, in substance and under a fair and reasonable interpretation, they amount to a finding of fact that the Fithian fund which Clark received passed, on his death, into the actual possession of Mrs. Clark, the reasons for and grounds of that finding being stated, so that the conclusion of her liability followed as a conclusion of law. Substantially the report declares that from the facts that Clark received the fund in part within four months before his death; that he deposited it to his own credit in the bank; that no proof was given of payments by him, or any new or different disposition of the money; that his executrix, when called on to produce his bank-book and check-book which would have shown the facts, refused to do so; the referee inferred and found that the fund, at Clark's death, passed into the hands of the executrix, and so, as a conclusion of law, that she was personally liable for its delivery to the petitioner. When the referee says, in his second conclusion of law, that the funds "are presumed" to have come into the possession of Mrs. Clark, he evidently means that he draws that inference, and that such possession by her is a fact which flows from the proof, and, while he might have stated it more precisely and accurately, I think it fairly states the fact. That he placed it among his conclusions of law does not deprive it of its force. (*Sherman* v. *H. R. R. R. Co.*, 64 N. Y. 254.)

And so I think the General Term were wrong in saying there was no such finding. In substance and effect there was. Nor was it without some evidence to support it. The inference was a possible one upon the conceded facts, and there was no legal error in the finding.

It follows that the judgment of the General Term and the decree of the surrogate, so far as appealed from, should be reversed. We do not think that we are bound to affirm the conclusions of the referee. They were reported to the surrogate in aid of his decision and decree, and when we reverse that, a new hearing should be had as to Mrs. Clark's individual

liability, and to leave that officer and the parties in proper freedom, we should vacate the order of reference. It is to be hoped as a result that the facts may fully appear, and danger of injustice to either party may be averted.

The judgment of the General Term and the decree of the surrogate, so far as appealed from, should be reversed, the order of reference vacated, and a new hearing granted, with costs to abide the event.

All concur.

Judgment reversed.